United States Courts
Southern District of Texas
ENTERED

AUG 1 5 2005

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

QUOC NGUYEN VO,           §
        Petitioner,     §
VS.                       §          CIVIL ACTION NO. H-03-5233
                        §
DOUGLAS DRETKE,           §
        Respondent.     §

## MEMORANDUM OPINION AND ORDER

Quoc Nguyen Vo, an inmate of the Texas Department of Criminal Justice –
Correctional Institutions Division (TDCJ), proceeding *pro se*, seeks habeas corpus relief
under 28 U.S.C. § 2254, challenging his state felony conviction for aggravated robbery.
Respondent has filed a motion for summary judgment, with a copy of the state court records.
(Docket Entries No. 17, 18, 23.)  Petitioner has responded.  (Docket Entry No. 22.)

Based on consideration of the pleadings, the motion and response, the record, and the
applicable law, the Court **GRANTS** summary judgment and **DISMISSES** this action.

## I.    Procedural Background

A jury found petitioner guilty of aggravated robbery in 1998 under Cause Number
761623 in the 178th District Court of Harris County, Texas, and assessed punishment at
fifteen years confinement in TDCJ. *Ex parte Vo*, Application No. 57,263-01, p. 2.  The state
court on direct appeal affirmed petitioner's conviction. *Vo v. State,* No. 01-98-01052-CR
(Tex. App.–Houston [1st Dist.] 2001, pet. ref'd) (not designated for publication).  The Texas
Court of Criminal Appeals refused discretionary review.  PDR. No. 01-1468.  Petitioner's

application for state habeas relief was denied without a written order on findings of the trial court. *Ex parte Vo*, at cover.

Petitioner's federal habeas petition raises the following grounds for relief:

(1)    the trial court's denial of a severance violated due process;

(2)    trial counsel was ineffective in failing to

   (a)    present evidence to support the motion for severance;

   (b)    object to an in-court identification;

   (c)    prepare and present an expert witness on misidentification;

   (d)    be knowledgeable in the law of "use" immunity;

   (e)    redact his co-defendant's incriminating statements;

   (f)    object to or request a hearing on his co-defendant's Fifth Amendment privilege;

   (g)    argue for probation during closing argument;

(3)    appellate counsel was ineffective in failing to raise as issues on appeal

   (a)    denial of the motion to sever;

   (b)    denial of a limiting instruction on extraneous offenses at punishment.

(4)    the trial court's denial of individualized sentencing violated due process;

(5)    unconstitutionality of Texas Code of Criminal Procedure article 37.07; and

(6)    newly discovered evidence of actual innocence.

Respondent moves for summary judgment, and argues that these grounds fail as a matter of law.

## II.    Factual Background

The state appellate court set forth the following statement of facts in its opinion:

[Petitioner] and co-defendant, [Tong], wearing bandannas covering the lower portion of their faces and carrying nine millimeter semiautomatic weapons, entered the Lees' house and held Mrs. Lee and her three-year-old daughter at gunpoint.  Tong bound Mrs. Lee's hands and feet, and demanded her money and purse.  As Mr. Lee entered the house through the kitchen, Tong shot him in the stomach.  The assailants threw Mr. Lee on the floor with the rest of his family.  [Petitioner] took Mrs. Lee's wallet from her purse and Mr. Lee's wallet and cellular phone.  [FN1 – Mrs. Lee testified that [petitioner] took the items; Mr. Lee testified that Tong took them.]  Tong fired a shot that struck the child in the leg.  He fired four more shots, striking Mr. Lee in the knee.

Four months later, the Lees saw a photograph of Tong on television. Subsequently, Detective Cheatham showed the Lees a video lineup, during which Mr. Lee identified Tong as the shooter, and Mrs. Lee identified Tong as the shooter and [petitioner] as the other assailant.

\*     \*     \*     \*

One month after the Lees were robbed, [Tran] was arrested while in possession of the firearm used in the Lee robbery.  The car Tran was arrested in also matched the description of the car leaving the Lees' home after the robbery.  [Petitioner] presented the testimony of [Hall], a friend of Tran and [petitioner], who testified Tran had confessed to her that he had committed the Lee robbery and [petitioner] had not been present or involved.  [Petitioner] also presented several witnesses who testified he was home the entire day of the Lee robbery, as well as evidence that [his] fingerprints were not found at the scene.

Although the robbers wore bandannas over their faces, they were in the house for 15-20 minutes.  The record reflects Mrs. Lee paid close attention to the faces of her assailants.  She provided careful descriptions of their eyes, hair length, and body size.  The record also reflects the defense witnesses were

close friends of [petitioner] and had an obvious interest in seeing him acquitted.

*Vo*, p. 2-4.

Over petitioner's objections, he and co-defendant Tong were tried together. Petitioner complained that because Tong was "on death row" for the fatal shooting of a police officer during a Sunny's convenience store robbery, petitioner's ability to present a defense was prejudiced.

At the punishment hearing, the State read to the jury Tong's written statement from the Sunny's convenience store robbery, which established that although Tong acted alone in shooting the police officer, other individuals had helped him plan and carry out the crime. (R.R. Vol. 12, pp. 135-36.)  Under grant of immunity from the Harris County District Attorney,  Tran testified at the hearing that Vo had driven Tran, Tong, and a third person to the Sunny's convenience store, and that Tong went into the store and returned a few minutes later with a towel over his hand. (R.R. Vol. 12, pp. 99-105.) The State impeached Tran with his prior statement to the police that Vo and Tong later told him to keep quiet about the convenience store shooting. (*Id.*, pp. 111-112.)

Tong did not testify at the guilt-innocence phase of trial, but did testify at the punishment hearing that petitioner was not involved in the Lee aggravated robbery. *Vo*, p. 4.  The jury rejected petitioner's request for community supervision, and assessed his punishment at fifteen years imprisonment.  Tong was given a life sentence.

### III.   The Applicable Legal Standards

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1) and (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002). A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this court considers whether the application was objectively unreasonable. *Id.* at 409, 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively

unreasonable in light of the evidence presented in the state-court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

These standards will be applied to the pending motion for summary judgment.

## IV.   Denial of Trial Severance

Petitioner argues that he was denied due process and a fair trial because the trial court refused to sever his trial from that of his co-defendant, Tong, who had been sentenced to death for fatally shooting the police officer at Sunny's. He complains that because he and Tong were jointly tried for the aggravated robbery of the Lees, the State was allowed to present evidence at the punishment hearing linking petitioner to the robbery and murder at Sunny's.

On direct appeal, petitioner argued that the trial court violated state law by refusing to try him separately from Tong. The state appellate court rejected this argument under state law grounds, and held as follows:

> Severance under article 36.09 of the Code of Criminal Procedure is not a matter of right but rests with the sound discretion of the trial court. To show an abuse of discretion, the proponent for severance bears a heavy burden and must show clear prejudice. Merely alleging the possibility of prejudice is not sufficient under article 36.09.

6

[Petitioner] raises three claims of prejudice. The first claim focuses on the Lees' identifying Tong from news coverage of his capital murder trial. [Petitioner] claims the Lees' identifying Tong resulted in their identifying him, and thus insinuated [petitioner]'s guilt by association. This assertion is merely a general allegation of prejudice.

[Petitioner] also claims the connection between Tong and him in the punishment phase would prevent the jury from separating them in determining culpability. The jury did separate culpability, however. While Tong was sentenced to life in prison plus a $10,000 fine, [petitioner]'s sentence for participating in the robbery was 15 years. Lastly, [petitioner] claims he and Tong were tried together to enable the State to introduce the capital murder evidence at punishment. However, any evidence admissible against both defendants would have been admissible whether they were tried jointly or separately. Here, were the evidence not admissible against [petitioner], the record reflects the trial court would have instructed the jury not to consider it. The record reflects the State had planned to present Tran's testimony placing [petitioner] at the scene of the capital murder, specifically, that [petitioner] drove Tong to and from the crime. But, when the punishment phase began, the State was unsure whether Tran would testify. Accordingly, the trial court stated that, if Tran did not testify, it would instruct the jury not to consider any evidence of the capital murder when assessing [petitioner]'s punishment. Because Tran testified and linked [petitioner] to the capital murder, the trial court properly made no special instruction to the jury regarding the capital murder on [petitioner]'s behalf. [Petitioner] has not met his burden to show clear prejudice.

*Vo*, pp. 16-18. On collateral review, petitioner expanded this ground to argue that by being forced to try his case with a co-defendant already on death row, he was found "guilty by association" and denied a fundamentally fair trial. *Ex parte Vo*, pp. 17-18. The state habeas court declined to review the issue "since these claims were raised on direct appeal and rejected by the Court of Appeals." *Ex part Vo*, p. 103. However, the issues of due process and fair trial under federal constitutional law were not determined on direct appeal as

petitioner had not raised those issues to that court.  In determining petitioner's constitutional legal issues, this Court will defer to the state appellate court's statement of the facts in absence of clear and convincing evidence from petitioner rebutting the presumed correctness of the state court's factual findings.

Petitioner argues that severance was constitutionally required under *Zafiro v. United States*, 506 U.S. 534 (1993).  In affirming the denial of a trial severance in *Zafiro*, the Supreme Court held that severance should be granted under Rule 14 of the Federal Rules of Criminal Procedure "only if there is a serious risk that a joint trial would compromise a specific trial right of a properly joined defendant or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539.  The Supreme Court noted that severance is not warranted merely because defendants may have a better chance of acquittal in separate trials. *Id.* at 540. *See also United States v. Krout*, 66 F.3d 1420, 1430 (5th Cir. 1995) (holding that "neither a quantitative disparity in the evidence nor the presence of a spillover effect requires a severance.").  Petitioner argues that evidence of his own involvement in Tong's capital murder offense would not have been admissible in a separate trial.  The state appellate court on direct appeal ruled to the contrary.  Accordingly, and even assuming applicability of the *Zafiro* standards, petitioner has not demonstrated specific and compelling prejudice that would have required a severance.

Petitioner also argues that his defense was substantially prejudiced by the denial of a severance because he and Tong presented irreconcilable defenses.  Petitioner does not

8

establish, and the record does not demonstrate, irreconcilable defenses. Petitioner and Tong both raised defenses of misidentification, and jointly presented an expert witness. Neither defendant attempted to show that the other defendant was culpable. Vo fails to show that the joint trial prejudiced him to such an extent that the district court could not provide adequate protection, and that the prejudice outweighed the State's interest in economy of judicial administration. *See United States v. Solis*, 299 F.3d 420, 440 (5th Cir. 2002). The record does not support petitioner's claimed denial of due process and a fair trial, and habeas relief is not warranted.

## V.    Ineffective Assistance of Trial Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance

9

was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor

of finding that trial counsel rendered adequate assistance and that the challenged conduct was

the product of a reasoned trial strategy.  *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir.

1996).  To overcome this presumption, a petitioner must identify the acts or omissions of

counsel that are alleged not to have been the result of reasonable professional judgment.

*Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).  However, a mere error by

counsel, even if professionally unreasonable, does not warrant setting aside the judgment of

a criminal proceeding if the error had no effect on the judgment. *Strickland,* 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been

different.  *Id.* at 694.  To determine prejudice, the question focuses on whether counsel's

deficient performance renders the result of the trial unreliable or the proceeding

fundamentally unfair.  *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  In that regard,

unreliability or unfairness does not result if the ineffectiveness does not deprive the

defendant of any substantive or procedural right to which he is entitled.  *Id.*

Petitioner asserts seven instances of ineffective assistance of trial counsel, as

discussed below.

A.    Failure to support the motion for severance

Petitioner complains that in requesting a trial severance, trial counsel presented oral

argument but no supporting evidence.  He argues that but for counsel's failure to present

evidence, a severance would have been granted.  This argument was rejected by the trial court on collateral review, which expressly found that, "While counsel failed to present any evidence to support the defense motion for severance, the trial court considered trial counsel's proffer as evidence prior to ruling on the defense severance motion." *Ex parte Vo*, p. 103.  Accordingly, the trial court accepted counsel's oral presentation as evidence for purposes of the motion.  Petitioner fails to identify any additional evidence counsel should have presented, and fails to show that but for such deficiency, a severance would have been granted.  No grounds for habeas relief are shown.

B.   <u>Failure to object to in-court identification</u>

Petitioner contends that trial counsel should have objected to Mrs. Lee's in-court identification of him, because Mrs. Lee relied "solely upon her 'ability' to distinguish person's eyes," and that her in-court identification was "wishful thinking" on her part.  The state court on direct appeal found that Mrs. Lee's in-court identification was proper and admissible, as shown by the following:

> When the witness identifies the defendant in court, independent of any pretrial identification procedure, the in-court identification is admissible at trial. Both at the pretrial identification hearing and at trial, Mrs. Lee testified she made her in-court identification of [petitioner] based on her memory of the robbery. Accordingly, the in-court identification was properly admitted.

*Vo*, p. 9 (citation omitted).  Petitioner's personal disagreement with Mrs. Lee's ability to identify him is conclusory, and there is no basis for disturbing the state court's determination

that the identification was admissible.  Counsel was not ineffective in failing to raise futile objections.  *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).

Moreover, the state habeas court found that counsel's pre-trial efforts to challenge the suggestiveness of the identification procedure preserved any error resulting from the in-court identification, and that petitioner was afforded reasonably effective assistance of trial counsel.  *Ex parte Vo*, pp. 103-104.  The Court of Criminal Appeals based its denial of habeas relief on these findings.  *Id.* at cover.  The state court's findings reasonably applied the law to the facts, consistent with clearly-established federal law, and were not objectively unreasonable.  An independent review of the state court record does not reveal clear and convincing evidence that would rebut the presumed correctness of the state court's adjudication of petitioner's claim.  No basis for habeas relief is shown.  28 U.S.C. § 2254(d)(1).

C.     Failure to prepare and call an expert witness on misidentification

Petitioner asserts that counsel failed to prepare and call an expert witness to establish his defense of misidentification.  The record does not support this argument.  In his affidavit submitted to the state habeas court, trial counsel testified as follows:

> In response to Issue No. 1, Curtis E. Wills, an identification expert, did testify on behalf of the defense in the trial of this cause.  The testimony of Mr. Wills is in volume 6, beginning on page 163, of the Reporter's Record.
>
> The main testimony of Mr. Wills was presented by Andrew Edison, trial counsel for the co-defendant [Tong].  Mr. Edison and I agreed before trial that Mr. Edison would present the testimony of Mr. Wills.  Before trial, Mr.

> Edison and I both met with Mr. Wills to review the matters relating to his
> testimony. I do not believe that any of the testimony presented by Mr. Wills,
> through Mr. Edison, was detrimental to [petitioner]. On behalf of [petitioner],
> I did ask Mr. Wills some follow-up questions.
>
> I believe that Mr. Wills was a competent identification expert and his
> testimony was presented to aid [petitioner] in his defense.

*Ex parte Vo*, pp. 84-85. The state habeas court expressly found that, "Trial counsel arranged

for an expert witness to present evidence challenging the reliability of the eyewitness

identification." *Id.*, p. 103. The state habeas court further found that, "The totality of the

representation afforded [petitioner] was sufficient to protect his right to reasonably effective

assistance of counsel in trial and on appeal[.]" *Ex parte Vo*, p. 104. The Court of Criminal

Appeals based its denial of habeas relief on the habeas court's findings. *Id.* at cover. The

state court's findings reasonably applied the law to the facts, consistent with clearly-

established federal law, and were not objectively unreasonable.

An independent review of the state court record shows that, contrary to petitioner's

allegations, trial counsel presented or jointly-presented an expert witness on petitioner's

defense of misidentification. Although petitioner claims that counsel's utilization of the

witness was "pitiful," he fails to identify any specific questions or line of inquiry that counsel

should or should not have asked or followed, and fails to show that but for these alleged

deficiencies, the result of the trial would have been different. The record does not reveal

clear and convincing evidence that would rebut the presumed correctness of the state court's

determination of petitioner's ineffective assistance claim, and no basis for habeas relief is shown. 28 U.S.C. § 2254(d)(1).

D.     Lack of knowledge regarding "use" immunity

Petitioner next claims that trial counsel was deficient in failing to realize that the State's grant of immunity to Tran regarding the Sunny's capital offense was illegal because Tran was not a party to the offense. The state habeas court rejected this argument and found that, "The immunity granted [Tran] was not testimonial immunity pursuant to [state law] but was legitimately granted under the State's authority to dismiss criminal prosecutions." *Ex parte Vo*, p. 104 (citations omitted). Petitioner fails to show that Tran's immunity was unauthorized under state law, and he thus fails to show that counsel was deficient.

In rejecting petitioner's claim of ineffective assistance of counsel, the state habeas court expressly found that, "The totality of the representation afforded [petitioner] was sufficient to protect his right to reasonably effective assistance of counsel in trial and on appeal[.]" *Ex parte Vo*, p. 104. The Court of Criminal Appeals based its denial of habeas relief on the habeas court's findings. *Id.* at cover. The state court's findings reasonably applied the law to the facts, consistent with clearly-established federal law, and were not objectively unreasonable. An independent review of the state court record does not reveal clear and convincing evidence that would rebut the presumed correctness of the state court's determination of petitioner's ineffective assistance claim. Nor does petitioner show that but

14

for counsel's alleged deficiency, the result of the trial would have been different.  No basis for habeas relief is shown.  28 U.S.C. § 2254(d)(1).

E.    <u>Failure to redact co-defendant's incriminating statements</u>

The record shows that during the punishment phase of trial, the State was allowed to read to the jury co-defendant Tong's written statement confessing to his fatal shooting of the police officer at Sunny's that resulted in his death sentence.  Petitioner complains that in the statement, Tong used the term "we" regarding the individuals who were with him during the offense, which inferentially incriminated petitioner in the offense.  Petitioner asserts that trial counsel was ineffective in not redacting the references to "we."  However, the Court has already determined that Tong's written statement was not inadmissible as to Vo during punishment, and petitioner fails to show that had counsel requested redaction, the request would have been granted.  No deficiency in counsel's performance is shown.

Even assuming trial counsel's performance were deficient in this aspect, no prejudice is shown.  Petitioner argues that because Tong's testimony absolved petitioner of any involvement in the Lee aggravated robbery, the jury "obviously" gave petitioner a fifteen year sentence for being with Tong during the capital murder offense.  This is an untenable argument.  The jury was not required to believe Tong's eleventh-hour exoneration of petitioner, and it arguably rejected Tong's testimony.  As noted by the state court on direct appeal, "If the jury had believed Tong, it could have given [petitioner] five years community

supervision instead of 15 years in prison." *Vo*, p. 6. Nothing in the record supports petitioner's claim of prejudice.

In rejecting petitioner's claim of ineffective assistance of counsel, the state habeas court expressly found that, "The totality of the representation afforded [petitioner] was sufficient to protect his right to reasonably effective assistance of counsel in trial and on appeal[.]" *Ex parte Vo*, p. 104. The Court of Criminal Appeals based its denial of habeas relief on the habeas court's findings. *Id.* at cover. The state court's findings reasonably applied the law to the facts, consistent with clearly-established federal law, and were not objectively unreasonable. An independent review of the state court record does not reveal clear and convincing evidence that would rebut the presumed correctness of the state court's determinations on this issue. Petitioner establishes neither deficient performance nor prejudice, and no basis for habeas relief is shown. 28 U.S.C. § 2254(d)(1).

F.     Failure to request a hearing on co-defendant's Fifth Amendment privilege

Under this argument, petitioner claims that counsel was ineffective during the punishment hearing in failing to request a hearing on or object to the State's repeated questioning of Tong after he invoked his Fifth Amendment rights. According to petitioner, the State's unanswered questions left the jury with "impressions of Vo's involvement" with Tong in the Sunny's capital offense.

In rejecting this argument, the state habeas court found that, "Since co-defendant Tong waived his Fifth Amendment protections when he testified in the punishment phase of trial,

the prosecutor did not act improperly by continuing to question Tong even after he attempted to assert his Fifth Amendment privilege during the prosecutor's cross-examination." *Ex parte Vo*, p. 104 (citing to *Rogers v. United States*, 340 U.S. 367 (1951); state citation omitted).   An attorney is not ineffective in failing to make futile or unfounded objections. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).   Moreover, Tran's testimony at the same hearing directly implicated Vo in the Sunny's offense.

The state habeas court found that, "The totality of the representation afforded [petitioner] was sufficient to protect his right to reasonably effective assistance of counsel in trial and on appeal[.]" *Id.*   The Court of Criminal Appeals based its denial of habeas relief on the habeas court's findings.  *Id.* at cover.   The state court's findings reasonably applied the law to the facts, consistent with clearly-established federal law, and were not objectively unreasonable.   An independent review of the state court record does not reveal clear and convincing evidence that would rebut the presumed correctness of the state court's determination of petitioner's ineffective assistance claim.   Nor does petitioner show that but for counsel's alleged deficiency, the result of the trial would have been different.   No basis for habeas relief is shown.   28 U.S.C. § 2254(d)(1).

G.    Failure to argue in favor of probation

Petitioner complains that counsel failed to argue in favor of probation during his closing argument at the punishment hearing.   In his affidavit submitted to the state habeas court, counsel testified in relevant part as follows:

[Petitioner] was eligible for probation[] from the jury and a Motion for Community Supervision was filed on [his] behalf, a copy of which is contained on page 67 of the Clerk's Record. The Court's punishment charge contains instructions on probation.

After reviewing the docket sheet, it appears that I began my argument sometime after 8:17 p.m. After reviewing my argument, it appears that I chose to focus on the extraneous offense that was presented by the State.

I do not know if an argument for probation would have been beneficial for [petitioner]. There are both positive and negative aspects of an argument for probation.

The testimony of co-defendant [Tong], which was presented during the punishment phase, exonerated [petitioner] of the primary offense. An argument for probation coupled with a request for the jurors to maintain strength in their individual verdict may have resulted in a hung jury and a mistrial. Based upon the facts of the primary offense and the jury's punishment verdict, in my opinion, it is obvious that some members of the jury did not belie[ve] that [petitioner] committed the primary offense.

An argument for probation would have reminded the jury that there was a viable alternative to incarceration for [petitioner]. An argument for probation may also have supplied the jury with an affirmation of my belief that [petitioner] is innocent of the primary and extraneous offenses.

On the negative side, the facts of the underlying aggravated robbery were extremely violent; an argument for probation may have caused the undersigned to lose any credibility with the jury.

*Ex parte Vo*, pp. 85-86. The state habeas court found counsel's affidavit to be true, and petitioner fails to rebut the presumed correctness of this finding by clear and convincing evidence. *Ex parte Vo*, p. 104. Accordingly, this Court presumes that the statements made by counsel in his affidavit are true. In his affidavit, counsel sets forth his trial strategy and reasoning for not arguing in favor of probation during closing argument. He addresses the

risks that were involved in arguing or not arguing for probation, and the uncertainty of what the jury may have been thinking. Petitioner fails to show that counsel's actions were not the result of sound trial strategy, and this Court will not second-guess counsel's decisions as deficient. *Strickland*, 466 U.S. at 689-90. Moreover, petitioner fails to show that but for counsel's failure to discuss probation during closing argument, the jury would have recommended probation. Petitioner's argument – that the jury "probably didn't notice probation in the instructions" – is purely speculative, and presents nothing for this Court's consideration.

In rejecting petitioner's claim of ineffective assistance of counsel, the state habeas court expressly found that, "The totality of the representation afforded [petitioner] was sufficient to protect his right to reasonably effective assistance of counsel in trial and on appeal[.]" *Ex parte Vo*, p. 104. The Court of Criminal Appeals based its denial of habeas relief on the habeas court's findings. *Id.* at cover. The state court's findings reasonably applied the law to the facts, consistent with clearly-established federal law, and were not objectively unreasonable. An independent review of the state court record does not reveal clear and convincing evidence that would rebut the presumed correctness of the state court's determination of petitioner's ineffective assistance claim. Petitioner presents no probative evidence of either deficient performance or prejudice, and no basis for habeas relief is shown. 28 U.S.C. § 2254(d)(1).

## VI.    Ineffective Assistance of Appellate Counsel

Persons convicted of a crime also are entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey,* 469 U.S. 387 (1985). This court reviews counsel's appellate performance under the *Strickland* standards. *See Goodwin v. Johnson,* 132 F.3d 162, 170 (5th Cir. 1998). Petitioner must allege and present facts that, if proven, would show that his attorney's representation was deficient and that the deficient performance caused him prejudice. *See Strickland,* 466 U.S. at 687-88, 692; *Jones v. Jones,* 163 F.3d 285, 300 (5th Cir. 1998). Effective assistance of appellate counsel does not mean that counsel will raise every available nonfrivolous ground for appeal. *Evitts,* 469 U.S. at 394. Nor will counsel be deficient for failing to urge a frivolous point. *West v. Johnson,* 92 F.3d 1385, 1400 (5th Cir. 1996). Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner. *Evitts,* 469 U.S. at 394. A reasonable attorney has an obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful. *Strickland,* 466 U.S. at 690-91.

Petitioner contends that appellate counsel was ineffective for failing to raise on appeal the trial court's denials of a severance and of a limiting instruction on extraneous offenses. This Court has already determined that the trial court's denial of a severance did not violate state law or petitioner's constitutional rights; accordingly, appellate counsel was not ineffective in failing to raise a meritless argument. Nor does petitioner show that appellate counsel was ineffective in failing to raise as error the trial court's denial of an extraneous

offense limiting instruction at the punishment hearing.  Respondent correctly argues that state law did not require an extraneous offense limiting instruction at the punishment hearing, and petitioner presents no applicable state law to the contrary in order to establish deficient performance by counsel.

The state habeas court found that the totality of representation afforded petitioner was sufficient to protect his right to reasonably effective assistance of counsel on appeal.  *Ex parte Vo*, p. 104.  This finding reasonably applied the law to the facts, consistent with clearly-established federal law, and was not objectively unreasonable.  An independent review of the state court record does not reveal clear and convincing evidence that would rebut the presumed correctness of the state court's determination of petitioner's ineffective assistance claims.  Nor does petitioner show that but for appellate counsel's alleged deficiencies, the result of the appeal would have been different.  No basis for habeas relief is shown.  28 U.S.C. § 2254(d)(1).

## VII.   Denial of Individualized Sentencing

Petitioner complains that the trial court's refusal to grant him "individualized sentencing" denied him due process.  According to petitioner, the trial court was required to read his and co-defendant Tong's punishment charges separately.  This argument was rejected by the state court on direct appeal, which held as follows:

> In his sixth issue, [petitioner] contends that the trial court erred by refusing to read [petitioner's] and Tong's punishment charges individually.  [Petitioner] argues he was caused some harm because the court's presentation of the

charge abruptly drew the jury's attention to [petitioner's] decision not to testify. As addressed above, we must first decide whether omitting the instruction was error.

The trial judge must read the charge to the jury as finally written. Both charges were identical except for some additional language in [petitioner's] charge that instructed the jury not to refer or allude to [petitioner's] decision not to testify. Here, the judge read the charges together, as written, paused to read the additional language of [petitioner's] charge, and then resumed reading the remainder of the charges together. The trial court did not violate [state law].

Even if the trial court erred, [petitioner] has not met his burden to show some harm from the error. When, as here, the defendant timely objects to the charge, reversal is required if the error caused the defendant some harm. The degree of harm must be assessed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. We must determine whether the error caused sufficient harm to require reversal of the conviction. The burden is on the defendant to show he has suffered some actual, rather than theoretical, harm from the error.

[Petitioner] argues the trial court's reading the charges together caused him some harm because it called the jury's attention to his decision not to testify. [Petitioner] admits, however, that his decision not to testify was already apparent to the jury; that it even "sticks out on the pages in the cold record." Accordingly, [he] has not shown any harm from the trial court's reading of the jury charge.

*Vo*, pp. 13-14 (citations omitted). The state court's findings reasonably applied the law to the facts, consistent with clearly-established federal law, and were not objectively unreasonable. An independent review of the state court record does not reveal clear and convincing evidence that would rebut the presumed correctness of the state court's determinations regarding this issue. To the extent petitioner here attempts to add new or

additional arguments under this ground, such arguments are procedurally defaulted and barred from consideration by this Court. *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). Where a petitioner procedurally defaults a claim by failing to raise it on direct review, the claim may be raised in habeas only if he can first demonstrate either cause and actual prejudice, or that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner satisfies none of these requirements, and no basis for habeas relief is shown. 28 U.S.C. § 2254(d)(1).

## VIII. Unconstitutionality of State Law

Petitioner contends that Texas Code of Criminal Procedure article 37.07, subsections (a) and (g), violate the 13th Amendment "because it allows the State to punish by servitude without conviction." In support, he claims that because co-defendant Tong testified during the punishment hearing that petitioner did not participate in the Lee robbery, "one must conclude" that the jury actually convicted him of the extraneous offense robbery. (Docket Entry No. 1, p. 20.) In rejecting this argument, the state habeas court found that, "[Petitioner's] challenge to the constitutionality of Article 37.07 of the Code of Criminal Procedure need not be considered since his claim fails to allege sufficient facts, which, if true, would entitle [him] to habeas relief." The Court of Criminal Appeals based its denial of habeas relief on the habeas court's findings. *Id.* at cover. The state court's findings reasonably applied the law to the facts, consistent with clearly-established federal law, and were not objectively unreasonable.

Petitioner fails to present clear and convincing evidence that would rebut the presumed correctness of the state court's determination.  An independent review of the record shows that in support of his argument, petitioner presents nothing more than conclusory allegations, unsupported in the record.[1]  Habeas relief is unwarranted.  28 U.S.C. § 2254(d)(1).

## VIII. Newly Discovered Evidence of Actual Innocence

Petitioner contends that under *Schlup v. Delo*, 513 U.S. 298 (1995), he is entitled to habeas relief due to newly discovered evidence of his actual innocence.  (Docket Entry No. 22, pp. 15-16.)  In order to show actual innocence under *Schlup,* a petitioner must establish it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after trial.  513 U.S. at 321.  To be credible, an actual innocence claim requires petitioner to support his allegations of constitutional error with new reliable evidence that was not presented at trial.  *Id.* at 324.  *See also Bosley v. Cain*, 409 F.3d 657, 662 (5th Cir. 2005).

---

[1]The Fifth Circuit has held that the admission of extraneous offense evidence during the punishment phase of a capital murder trial does not implicate federal constitutional concerns. *See Harris v. Johnson*, 81 F.3d 535, 541 & n. 22 (5th Cir. 1996). There is no reason why a different result is warranted in a noncapital case.

Petitioner fails to present any reliable new evidence of his actual innocence. Tong's sudden decision to tell the jury during punishment that petitioner was not present at the Lee aggravated robbery is, at best, suspect. The state court noted on direct appeal that Tong had already been sentenced to death in an earlier proceeding, was sentenced to life in this proceeding, and had nothing to lose by offering his last-minute revelation during punishment that co-defendant petitioner was innocent. *Vo*, pp. 5-6. Moreover, the jury, in light of Tong's acceptance of all blame, had the option of granting petitioner community supervision or sending him to prison. It chose the latter. Petitioner fails to establish it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of all of the evidence, including Tong's exculpation of petitioner's guilt.

Nor does Tong's testimony constitutes "newly discovered evidence." The state court on direct appeal found Tong's testimony to be cumulative and corroborative of other evidence presented during guilt-innocence, and that it was unlikely to affect the outcome of a new trial. *Vo*, p. 5. This determination is echoed in the state habeas court's finding that "[Petitioner] fails to present any newly-discovered evidence which would show that he is actually innocent of the aggravated robbery offense since [he] merely cites to the testimony of [Tong] that was presented in the punishment phase of trial[.]" *Ex parte Vo*, p. 103. These determinations are not objectively unreasonable, and petitioner fails to present clear and convincing evidence to rebut their presumed correctness. Habeas relief is not warranted.

## IX.    Certificate of Appealability

Under the AEDPA, a petitioner must obtain a certificate of appealability before he can appeal the district court's decision.  28 U.S.C. § 2253(c)(1).  A certificate of appealability will be granted only if the petitioner makes a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  Because petitioner has not made the necessary showing, a certificate of appealability will not issue.

## X.    Conclusion

Respondent's motion for summary judgment (Docket Entry No. 17) is **GRANTED**. The petition for a writ of habeas corpus is **DENIED**, and his case is **DISMISSED**.  Any and all pending motions are **DENIED** as moot.

SIGNED at Houston, Texas on _12 August_____, 2005.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE